**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.**

CITIZENS BANK, N.A.,

     Plaintiff,

     vs.

JES GLOBAL CAPITAL II, L.P.; JES GLOBAL
CAPITAL GP II, LLC; and ELLIOT S. SMERLING,

     Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, Citizens Bank, N.A. ("Citizens"), by its undersigned attorneys, hereby complains and alleges the following with respect to Defendants Elliott S. Smerling ("Smerling"), JES Global Capital II, L.P. ("JES Fund II") and JES Global Capital GP II, LLC ("JES GP II").

## NATURE OF THE ACTION

1.    This is an action to recover approximately $54 million that was misappropriated from Citizens by Defendants through fraud and deceit.

2.    Defendant Smerling held himself out to be the founder of JES Fund II, a legitimate private equity fund with investments in portfolio companies and approximately $200 million in capital commitments from prominent limited partners, including an endowment for a prestigious university, preeminent international financial institutions, and high net-worth individuals. As set forth in more detail below, these representations were false. In reliance on these and other false representations by Defendants – including forged and falsified legal and financial documentation – Citizens agreed to enter into a loan agreement with JES Fund II and JES GP II involving an

approximately $60 million revolving line of credit, of which approximately $54 million remains outstanding.

3.      On February 26, 2021, Smerling was arrested in Florida by agents with the Federal Bureau of Investigation ("FBI") and charged with violations of federal criminal law. In particular, Smerling was charged with wire fraud and aggravated identify theft in connection with a loan he obtained from Silicon Valley Bank ("SVB") in a criminal complaint filed by the United States Attorney for the Southern District of New York ("Criminal Complaint"). According to the Criminal Complaint, Smerling obtained a loan for a private equity fund he purported to manage, which upon information and belief is JES Global Capital III, L.P. ("JES Fund III"), for approximately $95 million, through false representations regarding purported capital commitments of purported limited partners to JES Fund III and other false and forged documentation, similar to the means and methods used by Defendants in defrauding Citizens as described and set forth herein.  On March 3, 2021, following a detention hearing in this Court, Smerling was determined to be a flight risk. Based on findings by the magistrate judge, including that the evidence against Smerling on these matters was "very substantial," Smerling was remanded into custody without bond and, upon information and belief, has been or will shortly be moved to the Southern District of New York for prosecution.

4.      On or about March 24, 2021, SVB filed a complaint ("SVB Complaint"), commencing a suit, Case No. 2021 Civ. 2552 (JPC) in the United States District Court for the Southern District of New York, against Smerling and JES Global Capital GP III, LLC ("JES GP III"), the general partner of JES Fund III. In the SVB Complaint, SVB set forth additional details regarding Smerling's fraud on SVB, including, but not limited to, the following:

a.     Smerling and JES GP III represented that JES GP III was a legitimate fund with approximately $500 million in capital contributions from limited partners (nearly all of whom overlap with the purported limited partners of JES Fund II).

b.     Smerling and JES GP III's representations included forged financial statements, including a fictitious audit opinion letter purportedly signed by a national accounting firm ("Accounting Firm A") – similar to a forged audit opinion letter submitted to Citizens by Defendants.

c.     SVB believes all of JES Fund III's purported limited partners are not, in fact, limited partners of JES Fund III and numerous documents provided by Smerling and JES GP III were inauthentic, inaccurate, or forged.

5.     Citizens brings this complaint to recover the amounts that were fraudulently obtained by Defendants from Citizens, and other damages caused by Defendants' wrongful conduct, and to obtain any and all other appropriate remedies.

## PARTIES AND VENUE

6.     Plaintiff Citizens is a national banking association with its principal office, as set forth in its Articles of Association, in Providence, County of Providence, and State of Rhode Island.

7.     Citizens, one of the oldest and largest financial institutions in the United States, provides a broad selection of banking products and services to businesses and individuals.

8.     Defendant JES GP II is a Delaware limited liability company with its principal place of business at 222 Lakeview Ave., Ste. 1660, West Palm Beach, Florida 33401.

9.     Defendant JES Fund II is a Delaware limited partnership with its principal place of business at 222 Lakeview Ave., Ste. 1660, West Palm Beach, Florida 33401. Defendant JES GP II is the general partner of JES Fund II. Based on Plaintiff's investigation to date, JES Fund II has no true limited partners.

10.     Defendant Smerling is an individual and JES GP II's sole member. Upon information and belief, Smerling resides in Lake Worth, Florida.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.  As a national banking association with its main office in Rhode Island, Plaintiff Citizens is a citizen of Rhode Island, *see* 28 U.S.C. § 1348, while each Defendant is a resident of Florida – Defendant Smerling is a citizen of Florida, Defendant JES GP II is a citizen of Florida where its sole member, Smerling, is a citizen, and Defendant JES Fund II is a citizen of Florida where its only true partner, JES GP II, is a citizen because that is where its sole member, Smerling, is a citizen.

12.     The Court has jurisdiction over Defendants for numerous reasons, including the following:  (a) each Defendant is domiciled in Florida; (b) a substantial portion of Defendants' wrongful acts occurred in Florida; and (c) JES Fund II and JES GP II expressly consented in Section 11.17 of the Loan Agreement (as such term is defined in paragraph 26 hereof) to jurisdiction and venue in any court where Citizens determines such action is necessary or appropriate to exercise its rights or remedies under its agreement with JES Fund II and JES GP II.

13.     Venue in this District is proper because under 28 U.S.C. § 1391(b), a substantial part of the events giving rise to the claims occurred in the Southern District of Florida.

## SUBSTANTIVE ALLEGATIONS

### I.     THE LOAN AND SECURITY AGREEMENT

### A.     Defendants' Misrepresentations During The Loan Application Process.

14.     At all relevant times, Smerling held himself out as the founder, principal and controlling person of JES Fund II. Smerling was the principal contact for and principal representative of JES Fund II and JES GP II with Citizens in connection with the inception, documentation, and administration of the lending relationship with Citizens.  Among other things,

4

this was evidenced by the loan documents designating Smerling's failure or inability to be employed by or devote a significant portion of his working time and attention to JES Fund II and JES GP II as a "Triggering Event," which in turn constitutes a "Key Person Event" under the Loan Agreement, and would result in an immediate Event of Default under the loan documents. Further, Smerling had sole signing authority with respect to the bank account maintained by JES Fund II at Citizens. At all relevant times, Citizens relied to its detriment on the statements made and other information provided by Defendants and other representatives or agents of Smerling, JES Fund II and JES GP II on their behalf.

15.     Prior to November 2019, Smerling represented to Citizens that JES Fund II was a successful private equity fund, with interests in multiple portfolio companies in various industries. Smerling further represented that he was the principal of other successful private equity funds, including JES Global Capital L.P. ("JES Fund I") and JES Fund III.

16.     Prior to November 2019, Smerling and Citizens discussed the possibility of a credit facility at Citizens for JES Fund I, JES Fund II and/or JES Fund III. Ultimately, Smerling requested a line of credit from Citizens for JES Fund II. While Smerling and Citizens discussed different amounts for the line of credit, Smerling ultimately requested a line of credit for JES Fund II in the amount of $60 million.

17.     As part of this process, Defendants submitted numerous false and fictitious documents and provided other false information to Citizens and its representatives, including its transaction counsel, in order to influence Citizens in deciding whether to approve JES Fund II's request for a $60 million line of credit. These documents related to both JES Fund I and JES Fund II.

18.     For example, on or around November 7, 2018, Defendants represented that JES Fund II had over a dozen limited partners ("Limited Partners") and one general partner (JES GP II), with capital commitments totaling approximately $200 million.  Smerling represented that all but four of the Limited Partners had also invested in Fund I, with capital commitments to Fund I totaling approximately $80 million.  Because Defendants knew the reputation and creditworthiness of the Limited Partners would be important to Citizens, Defendants expressly represented that the Limited Partners included a prestigious university endowment, multiple investment divisions/subsidiaries of premier international financial institutions, and several high net-worth individuals.

19.     On or around November 7, 2018, Defendants provided Citizens with a purported November 20, 2015 limited partnership agreement ("Limited Partnership Agreement") and a list of Limited Partners, along with their respective capital commitments.

20.     On or around October 29, 2019, Defendants provided Citizens with individual subscription agreements for each Limited Partner ("Subscription Agreements") evidencing, again, each Limited Partner's purported capital commitments and other obligations.  Based on information provided by at least six Limited Partners, the signatures on the Limited Partnership Agreement and Subscription Agreements relating to such persons are false and these six Limited Partners have no business relationship with Defendants.  Based on information reflected in the Criminal Complaint, the SVB Complaint, and the inquiries of Citizens representatives, Citizens has not been able to verify that any of the Limited Partners, in fact, have a business relationship with Defendants.  Based on information and belief, JES Fund II, in actuality, is a partnership with one partner – JES GP II, with Smerling as JES GP II's sole member.

21.     Further, on or about November 7, 2018 and August 12, 2019, Defendants provided Citizens with a purported capital call history for JES Fund II, which was represented as reflecting the history of capital call contributions from the Limited Partners.  This too was false and misleading.  As noted above, most or all of the designated Limited Partners did not, in fact, execute a Subscription Agreement, otherwise become a party to the Limited Partnership Agreement or make any capital contribution to JES Fund II.

22.     Also, a third party plan administrator is a common industry feature, particularly in the case of smaller funds like JES Fund II, providing operational support in connection with (i) financial reporting requirements; (ii) processing and distributing capital call notices, distributions, and other communications; and (iii) clearing investor "Know Your Customer" requirements.  On August 20, 2019, Smerling, via an e-mail, and in response to a Citizens inquiry, stated that "Orangefield/Columbus" was JES Fund II's plan administrator.  Following Smerling's arrest, Citizens has not been able to confirm the truth of this statement and, on information and belief, understands that such plan administrator had changed its name prior to Smerling's August 20, 2019 e-mail.

23.     At some point prior to October 23, 2019, Defendants submitted purported 2018 financial statements for JES Fund II to Citizens.  Defendants represented that the financial statements had been audited by Accounting Firm A by providing an audit opinion letter purportedly signed by Accounting Firm A.  These representations were false.  According to Accounting Firm A, the firm never acted as auditor to JES Fund II.

24.     On or about October 1, 2019, and in response to Citizens' articulated concerns regarding an aspect of the Limited Partnership Agreement, Smerling represented to Citizens that he had spoken to JES Fund II's Limited Partners regarding a proposed amendment to the Limited

Partnership Agreement to address Citizens' concern, stating that such an amendment was "not an issue whatsoever." That statement was false. Smerling later submitted to Citizens an amendment to the Limited Partnership Agreement, purportedly executed by each Limited Partner. Here again, this documentation was forged.

25.     On or about October 8, 2019, Citizens e-mailed Smerling and asked: "Have any of the [limited partners] in any of your funds ever been materially delinquent in submitting their capital calls and have any ever been deemed defaulted?" Smerling responded "Never!" This statement was false and misleading in that, as set forth in the Criminal Complaint, the SVB Complaint, and based on Citizens' inquiries to date, JES Fund II has no genuine limited partners. Further, as alleged above, JES Fund II's Limited Partners were also not genuinely parties to the Limited Partnership Agreement or otherwise business partners of JES Fund II. Defendants misrepresented these business relationships to Citizens.

26.     In reliance on these fraudulent documents and other misrepresentations made by Defendants, Citizens entered into a Revolving Credit and Security Agreement with JES Fund II and JES GP II, executed by Smerling on behalf of JES Fund II and JES GP II and effective as of November 22, 2019 (the "Loan Agreement"). A true and correct copy of the Loan Agreement (with the names of the purported Limited Partners set forth on the second page of Exhibit A thereof redacted) is attached as Exhibit A hereto. Under the Loan Agreement, Citizens agreed to extend to JES Fund II a revolving line of credit of up to approximately $60 million, secured by the $200 million in capital commitments made by the Limited Partners. Pursuant to Section 6.1 of the Loan Agreement, and among the stated conditions precedent to the effectiveness of the Loan Agreement and the other Loan Documents in connection with the closing thereunder, JES Fund II and JES GP II were required to deliver, and at the closing, delivered or purported to deliver, designated

supporting documents, including lien filings, a certificate of a "Responsible Officer," a "Secretary's Certificate," a favorable legal opinion of outside counsel, and each Limited Partner's duly executed Subscription Agreement and side letter (if applicable), to Citizens.

27.     Following the closing under the Loan Agreement, Defendants continued to make misrepresentations and omissions of material fact to Citizens, in order to conceal Defendants' fraud and in order to induce Citizens to approve extensions of credit under the Loan Agreement.

28.     For example, on April 28, 2020, Defendants provided Citizens with JES Fund II's financial statements for 2019. These financial statements again included a purported audit opinion letter from Accounting Firm A, which was fictitious. Defendants also provided Citizens with financial statements on June 12, 2020, August 24, 2020, and November 25, 2020, which contained partnership balance sheets and purported partner capital contributions on "Orangefield-Columbus" letterhead.  Upon information and belief, these documents were also fraudulent and not authentic.

29.     Further, on September 22, 2020, Smerling e-mailed Citizens and advised that JES Fund II planned a $5 million capital call "in the next two weeks."  Then on October 5, 2020, Defendants caused 17 wires to be sent to Citizens, totaling approximately $5,000,070.   The originator information for the wires represented that the transfers were from the Limited Partners and JES GP II.  This was false and misleading in that all 17 wires originated from one account controlled by Defendants at another financial institution.

**B.      The Loan Agreement and Extensions of Credit Under the Loan Agreement.**

30.     Under the Loan Agreement, the capital commitments of the Limited Partners served as the primary credit support and collateral for all extensions of credit under the Loan Agreement. Thus, evidence substantiating the existence of the Limited Partners and confirming their commitment to provide $200 million in capital to JES Fund II was pivotal to Citizens' determination as to whether to approve entering into the Loan Agreement and extending credit

pursuant thereto. Without evidence of the identity of the Limited Partners and representations as to each of the Limited Partner's commitments, Citizens would not have entered into the Loan Agreement, or agreed to or made extensions of credit under the Loan Agreement.

31.     Consistent with the foregoing, and among the conditions precedent in the Loan Agreement for an extension of credit by Citizens, was the required delivery of duly executed Subscription Agreements between JES Fund II and each of the purported Limited Partners. (Ex. A, at § 6.1(f)).

32.     Also among the conditions precedent in the Loan Agreement for an extension of credit by Citizens was that all representations and warranties in the Loan Agreement be true and accurate at the time. (Ex. A, at § 6.2(a).) The representations and warranties of JES Fund II and JES GP II (collectively, the "Credit Parties") included that:

a.     The Credit Parties are duly organized or formed and are validly existing in good standing under the laws of its jurisdiction or organization; have the requisite power and authority to own its properties and assets and to carry on its business as now conducted; and are qualified to do business (Ex. A, at § 7.1);

b.     All of the Limited Partners, together with their true and correct capital commitment and uncalled capital commitment, have been correctly represented (Ex. A, at § 7.15);

c.     Each Limited Partner has executed such Limited Partner's Subscription Agreement, which accurately sets forth such Limited Partner's capital commitment to JES Fund II (Ex. A, at § 7.16);

d.     No Credit Party knows of any facts or circumstance that could constitute a defense to the obligations of the Limited Partners to make capital contributions to JES Fund II pursuant to a capital call under the Subscription Agreements (Ex. A, at § 7.19);

e.     The financial statements provided by the Credit Parties fairly present in all material respects JES Fund II's financial condition (Ex. A, at § 7.6);

f.     The Credit Parties, taken as a whole, are solvent (Ex. A, at § 7.23); and

g.     All information provided by or on behalf of the Credit Parties in connection with the Loan Documents and related transactions is true and correct in all material respects as of the date on which such information was provided. (Ex. A, at § 7.7.)

33. In further reliance on the agreements, information, representations, and warranties described above, including in paragraph 32, Citizens made extensions of credit pursuant to borrowing requests under the Loan Agreement on the following dates:

a. $35,000,000 on December 6, 2019;

b. $22,000,000 on June 4, 2020; and

c. $2,600,000 on February 23, 2021.

34. Among other things, the Loan Agreement provides that any default in the payment of principal is an immediate Event of Default under the Loan Agreement. (Ex. A, at § 10.1(a)).

35. Among other things, the Loan Agreement provides that should any representation or warranty made by the Credit Parties, including those summarized above in paragraph 32, prove untrue or inaccurate in any material respect, it is an Event of Default under the Loan Agreement. (Ex. A, at § 10.1(b)).

36. Among other things, the Loan Agreement provides that a breach by JES Fund II or JES GP II of the obligation to provide audited financial statements or other information reasonably requested, is an Event of Default under the Loan Agreement. (Ex. A, at  § 8.1(a), 8.1(k), § 10.1(c).)

37. Among other things, the Loan Agreement provides that the default of the Limited Partners having Capital Commitments aggregating 10% or greater of the total Capital Commitments of the Limited Partners in the obligation to fund Capital, which failure is not cured within five business days, is an event of Default under the Loan Agreement.  (Ex. A, at § 10.1(k)).

38. Among other things, the Loan Agreement provides that the occurrence and continuation of a "Key Person Event," which includes Smerling's failure to be employed by or devote a significant portion of his working time and attention to JES Fund II and JES GP II, is an Event of Default under the Loan Agreement. (Ex. A, at § 10.1(q)).

39.     If any Event of Default has occurred and is continuing, the Loan Agreement provides that Citizens may exercise its rights and remedies, including certain enumerated rights and remedies such as suspension or termination of the line of credit and the right to declare all principal and interest extended or owed under the line of credit immediately due and payable. (Ex. A, at § 10.2.)

## II.     CRIMINAL PROCEEDINGS AGAINST SMERLING.

40.     On February 26, 2021, Smerling was arrested by FBI agents in Florida pursuant to the Criminal Complaint in connection with a loan extended to Smerling-related entity JES Fund III by SVB. The Criminal Complaint charges Smerling with wire fraud under 18 U.S.C. §§ 2 & 1343, and aggravated identity theft under 18 U.S.C. §§ 2, 1028A(a)(1) & 1028A(b).

41.     According to the Criminal Complaint, Accounting Firm A told the FBI that the audit opinion letter that Smerling provided to SVB contained in purported audited financial statements for an entity that SVB has identified as JES Fund III was not prepared by Accounting Firm A.  According to the Criminal Complaint, the letterhead of the purported Accounting Firm A opinion letter uses an address at which Accounting Firm A has not operated for several years and the language and style of the purported Accounting Firm A opinion letter are not consistent with the language and style of current Accounting Firm A opinions.  According to the Criminal Complaint, Accounting Firm A has found no indication that Smerling, or the entities which SVB has identified as JES GP III or JES Fund III are or were ever clients of Accounting Firm A.

42.     According to the Criminal Complaint, the Chief Investment Officer of an endowment fund in New York  – a purported limited partner of JES Fund III, according to Smerling – confirmed that this endowment fund was not, in fact, a limited partner of the entity which SVB has identified as  JES Fund III.  An official of the endowment fund told the FBI that the officer has no knowledge of Smerling; the signature appearing on the purported subscription agreement

of the endowment fund is not the officer's signature; and to date, the endowment fund has found

no indication that it wired any money or made any commitment to the entity SVB has identified

as JES Fund III.

43.     According to the Criminal Complaint, representatives of an investment manager

based in New York told the FBI that: the signature of the chief executive officer of the investment

manager appearing on the signed subscription agreement Smerling presented to SVB is highly

unlikely to be legitimate; and to date, the investment manager has found no indication that the

investment manager wired any money or made any commitment to the entity which SVB has

identified as JES Fund III.

44.     On March 3, 2021, a detention hearing for Smerling was held before this Court.  At

that hearing, Smerling consented to transfer to the Southern District of New York for trial. Also at

that hearing, attorneys with the U.S. Department of Justice ("DOJ") argued that Smerling is a flight

risk based on his substantial wealth, prior international travel, marriage to a Brazilian citizen,

maintenance of a home in Brazil and the nearly $80 million owed to SVB that remains unaccounted

for. At the conclusion of the hearing, Magistrate Judge William Matthewman remanded Smerling

into custody without bond.

45.     On March 4, 2021, Judge Matthewman issued a Pretrial Detention Order, in which

he found a serious risk of flight or nonappearance if Smerling is released from federal custody,

and that no condition or combination of conditions would reasonably assure Smerling's

appearance. Judge Matthewman further found that the "weight of the evidence against Defendant

is very substantial," and that Smerling's conduct "involves a large-scale financial fraud" in which

he "impersonat[ed] various officers of a university endowment fund and an investment fund and

forg[ed] several documents."

III.   **CITIZENS' DISCOVERY OF DEFENDANTS' FRAUD AND DECLARATION OF EVENTS OF DEFAULT.**

46.     Upon learning of the Criminal Complaint, Citizens contacted Defendants immediately.

47.     Citizens first sent a notice to JES Fund II and JES GP II on March 4, 2021, indicating that the Criminal Complaint constituted a potential "Key Person Event" and thus, a potential Event of Default under the Loan Agreement and requesting access to the books and records of JES Fund II and JES GP II, and other documents in their possession, pursuant to Section 8.3 of the Loan Agreement.

48.     The next day, following the entry of an order for the indefinite detention of Smerling based on the charges in the Criminal Complaint, Citizens sent a second notice (the "JES II Default Notice") declaring an Event of Default under the Loan Agreement based on a Key Person Event in light of Smerling's detention.

49.     Referencing the capital call described above in paragraph 29, the JES II Default Notice also declared an Event of Default that occurred in October 2020 when approximately $5 million purportedly obtained by JES Fund II in connection with a capital call was wired to Citizens from an account held by JES Fund II at another financial institution rather than being wired directly to Citizens by the Limited Partners, in violation of Sections 5.2(a) and 9.19 of the Loan Agreement.

50.     Through the JES II Default Notice, Citizens (1) terminated its commitments under the Loan Agreement, (2) accelerated the maturity of the indebtedness under the Loan Agreement, (3) demanded immediate payment in full of all outstanding obligations under the Loan Agreement, and (4) absent such payment in full, demanded that, on or before March 11, 2021, JES Fund II and JES GP II issue capital call notices to the Limited Partners in a sufficient amount to satisfy all amounts owed to Citizens under the Loan Agreement.  Citizens also indicated its intent to exercise

its rights under the Loan Agreement to deliver capital call notices to the Limited Partners in the event JES Fund II and JES GP II failed to do so.

51.     Following delivery of the JES II Default Notice, Citizens contacted the Controller of JES Fund II to inquire regarding the delivery of capital call notices and other matters pertaining to the operations of JES Fund II.  According to the Controller, only Smerling had the ability to execute documents such as capital call notices on behalf of JES Fund II.  According to the Controller, Citizens could only communicate with Smerling through his criminal defense attorney and, as a result of his incarceration, Smerling otherwise would be unable to act on behalf of JES Fund II.  In response to an e-mail requesting access to JES Fund II's books and records pursuant to the Loan Agreement, the Controller of JES Fund II stated "I am not authorized to do anything." When asked, "Do you have any contact information for any of the JES II portfolio companies?" the Controller responded "I have no knowledge of what you ask."

52.     Citizens then attempted to contact Smerling's defense attorney, who proved unable to provide any material assistance in connection with Citizens' efforts to enforce its rights under the Loan Agreement to inspect the books and records and obtain other information regarding JES Fund II and JES GP II.

53.     The Defendants never sent capital call notices to the Limited Partners as required by Section 10.2 of the Loan Agreement.

54.     Because of the Defendants' failure to comply with Citizens' demand to issue capital call notices, on March 12, 2021, Citizens exercised its rights under Section 10.2 of the Loan Agreement to issue capital call notices to all of the Limited Partners (the "March 12 Capital Call Notices").  The March 12 Capital Call Notices demanded that each Limited Partner honor such

Limited Partner's purported Capital Commitments by transferring directly to Citizens an amount equal to a pro rata share of JES Fund II's debt to Citizens on or before March 29, 2021.

55.     To date, none of the Limited Partners had provided any funds to Citizens.  To the contrary, those Limited Partners that responded to Citizens denied that they ever executed a Subscription Agreement, became party to the Limited Partnership Agreement, or made any capital contributions or commitments to JES Fund II. Specifically:

a.     On March 16, 2021, Limited Partner 1 sent an e-mail to Citizens indicating that Limited Partner 1 had no record of the Subscription Agreement or of interaction with Smerling, and the purported signature on the Subscription Agreement was not genuine.

b.     The general counsel of Limited Partner 2 made a telephone call to a representative of Citizens during which he denied the existence of any investment with JES Fund II and said the purported signature on the Subscription Agreement was not genuine as the individual had left Limited Partner 2 in 1999.

c.     In multiple communications, Citizens and its representatives confirmed that Limited Partner 3 had not signed a Subscription Agreement with JES Fund II.

d.     On March 23, 2021, the general counsel of Limited Partner 4  stated in an e-mail to Citizens that Limited Partner 4 had checked its internal records and had found no evidence that it ever had executed a Limited Partnership Agreement or Subscription Agreement, or had any other investment or business relationship, with JES Fund II.

e.     On March 24, 2021, an in-house attorney at Limited Partner 5 stated that neither its New York branch nor its securities affiliate had any records of any activity with JES Global Capital entities; and

f.     On April 2, 2021, a Citizens representative received a telephone call from a resident at the purported address for Limited Partner 6, a high net-worth individual.  Such resident stated that she had lived there for eleven years, that Limited Partner 6 had not lived there during that period, and that the previous owner of the residence did not have Limited Partner 6's name.

56.     As of the date hereof, no Limited Partners have acknowledged the existence of a valid Subscription Agreement or capital commitment to JES Fund II, or otherwise made any of the requested capital contributions to JES Fund II.

57.     Defendants' actions set forth above have been undertaken with specific intent to inflict harm on Citizens and demonstrate willful misconduct, malice, fraud, oppression, lack of care, wantonness and criminality, which conduct raises a presumption of conscious indifference and entitles Citizens to, in addition to its compensatory damages, an award of punitive damages. Pursuant to Section 11.4(c) of the Loan Agreement, Citizens, JES Fund II, and JES GP II have contracted not to seek the imposition of punitive damages against each other. Citizens has no such agreement with Smerling, and accordingly, Citizens seeks, in addition to its compensatory damages, an award of punitive damages against Smerling.

## CLAIMS

### COUNT I: BREACH OF CONTRACT
### (JES FUND II & JES GP II)

58.     Plaintiff repeats and realleges each allegation in paragraphs 1 through 57 set forth above, as though fully set forth herein.

59.     The Loan Agreement constitutes a binding contract against JES Fund II and JES GP II, under New York law, the governing law of the Loan Agreement, enforceable in all respects at the election of Citizens.

60.     Citizens has fully performed all of its prior obligations under the Loan Agreement, including advancing approximately $60 million in loans as set forth in paragraph 33 hereof.

61.     Each of JES GP II and JES Fund II has breached its obligations under the Loan Agreement. Among other things, each of JES GP II and JES Fund II made material statements and otherwise provided information and documents to Citizens that were materially false in an effort to induce Citizens, and which did induce Citizens, to enter into the Loan Agreement and extend approximately $60 million in loans. Each such instance of having provided such false and fraudulent information constitutes a separate and distinct Event of Default under the Loan

Agreement. Moreover, each of JES GP II and JES Fund II are in default under other provisions of the Loan as set forth herein. Upon learning of such Events of Default, Citizens appropriately (i) declared an Event of Default under paragraph 10.2 of the Loan Agreement, (ii) terminated the line of credit extended to JES Fund II under paragraph 10.2 of the Loan Agreement and (iii) demanded immediate repayment of all amounts due thereunder.

62. The ongoing failure of each of JES GP II and JES Fund II to pay all amounts owed following the declaration of such Events of Default, including the outstanding principal balance of approximately $54 million, constitutes a material and separate breach of (and thus, an Event of Default under) the Loan Agreement under Section 10.1(a).

63. Citizens has been damaged by JES Fund II and JES GP II's breaches of the Loan Agreement, including, but not limited to, damages associated with the extensions of credit and concomitant transfers of funds under the Loan Agreement.

## COUNT II: FRAUDULENT INDUCEMENT
### (All Defendants)

64. Plaintiff repeats and realleges each allegation in paragraphs 1 through 63 set forth above, as though fully set forth herein.

65. Each Defendant, intending to induce Citizens to enter into the Loan Agreement and extend a $60 million line of credit to the JES Fund II and in wanton and conscious disregard of Citizens rights, knowingly made false representations and statements of material facts to Defendants, and knowingly provided inauthentic and forged documentation.

66. In entering into the Loan Agreement and the other Loan Documents and agreeing to extensions of credit under the Loan Agreement, Citizens justifiably relied upon the representations and statements made by each Defendant, including as set forth in (and consisting

of) the inauthentic and forged documentation the Defendants knowingly and intentionally provided to Citizens.

67.     Citizens has been damaged by Defendants' knowingly and intentionally false statements and delivery of  inauthentic and forged documents, including, but not limited to, damages associated with the extensions of credit and concomitant transfers of funds under the Loan Agreement, warranting the award to Citizens of damages for such wanton and egregious conduct.

## COUNT III:  FRAUD
### (All Defendants)

68.     Plaintiff repeats and realleges each allegation in paragraphs 1 through 67 set forth above as though fully set forth herein.

69.     Each Defendant (and the Defendants collectively), including through the statements and actions of Smerling, including through the intentional knowing delivery of inauthentic and forged or otherwise false documents, including purported financial statements, audit opinions, Subscription Agreements, and borrowing requests, made multiple material misrepresentations to Citizens in wanton and conscious disregard of Citizens' rights, including as to the financial condition of JES Fund II and JES GP II, including as to the existence of the purported Limited Partners and Limited Partners' capital commitments to JES Fund II that would serve as Citizens' primary collateral supporting the repayment of amounts to be advanced by Citizens under the Loan Agreement.

70.     Each Defendant (and the Defendants collectively) intended to defraud Citizens thereby by knowingly and intentionally seeking to obtain approximately $60 million in loans based on false premises and deceit.

71.     Citizens reasonably relied on such material misrepresentations and omissions and would not have advanced any Loans under the Loan Agreement in the absence thereof.

72.     Citizens has been damaged by each Defendant's material misrepresentations and omissions, including, but not limited to, damages associated with Citizens' extensions of credit and concomitant transfers of funds under the Loan Agreement, warranting the award to Citizens of damages for such wanton, intentional, and egregious conduct.

## COUNT IV: CONVERSION
### (All Defendants)

73.     Plaintiff repeats and realleges each allegation in paragraph 1 through 72 set forth above, as though fully set forth herein.

74.     Each Defendant (and the Defendants collectively), intending to induce Citizens to enter into a line of credit and advance approximately $60 million for the benefit of JES Fund II and JES GP II to which neither was entitled and that instead was in the rightful ownership and possession of Citizens, knowingly made false representations and statements of material fact to Citizens, and knowingly provided inauthentic and forged documentation to Citizens.

75.     As a result of Defendants' false statements of material fact and delivery of inauthentic and forged documents, Citizens has been damaged by being deprived by Defendants of Citizens' rightful ownership and possession of approximately $60 million, of which at least approximately $54 million remains in the possession, custody or control of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment against Defendants:

a)     declaring and finding that JES Fund II and JES GP II breached the terms of the Loan Agreement;

b)     declaring and finding that Defendants engaged in tortious and inequitable conduct, injuring Plaintiff;

c)   awarding Plaintiff its compensatory damages, including disgorgement and interest, against JES Fund II and JES GP II, and its compensatory, consequential, punitive, and special damages against Smerling, for Defendants' breaches of contract and tortious and inequitable conduct;

d)   awarding Plaintiff the costs, expenses and disbursements of this action, including attorneys' and experts' fees; and

e)   awarding Plaintiff such other and further relief as this Court may deem just, equitable and proper.

**Dated:  May 5, 2021.**                    Respectfully submitted,

By:   /s/ *Alexandra D. Blye*
     John R. Hart
     Florida Bar No.:  612553
     E-mail: jhart@carltonfields.com
     Robert N. Gilbert
     Florida Bar No.:  310662
     E-mail:  rgilbert@carltonfields.com
     Alexandra D. Blye
     Florida Bar No.:  71499
     E-mail:  ablye@carltonfields.com
     **CARLTON FIELDS, P.A.**
     525 Okeechobee Boulevard, Suite 1200
     West Palm Beach, FL 33401
     Telephone: (561) 659-7070
     Facsimile: (561) 659-7368

     and

     Vincent J. Connelly
     (*Pro Hac Vice* Application *Pending*)
     E-mail:  vconnelly@mayerbrown.com
     J. Gregory Deis
     (*Pro Hac Vice* Application *Pending*)
     E-mail:  gdeis@mayerbrown.com
     **MAYER BROWN LLP**
     71 South Wacker Drive
     Chicago, IL 60606
     Telephone: (312) 782-0600
     Facsimile:  (312) 701-7711

     and

     Jean-Marie Atamian
     (*Pro Hac Vice* Application *Pending*)

E-mail:  jatamian@mayerbrown.com
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile:  (212) 262-1910

*Attorneys for Plaintiff, Citizens Bank, N.A.*

<u>VERIFICATION</u>

Under penalty of perjury, I declare that I have read the foregoing Verified Complaint, and

the facts stated in it are true and correct.

CITIZENS BANK, N.A.

By: _____
Joseph R. Sileo
Senior Vice President