# BERGER SINGERMAN

May 6, 2022

**VIA ELECTRONIC MAIL**

Jilan Kamal
Assistant United States Attorney
Southern District of New York
Jilan.Kamal@usdoj.gov

      Re:    *USA v. Elliot Smerling*, Case No. 1:21-cr-00317-DLC-1

Dear Judge Cote:

This letter ("Letter") is intended to provide the Court the perspective of James S. Feltman, the Receiver appointed by the United States District Court in the Southern District of Florida and in the Southern District of New York.  The civil cases against Mr. Smerling by Citizens Bank and Silicon Valley Bank, in which Mr. Feltman was appointed to serve as Receiver, are now consolidated in the Southern District of New York before Judge Cronan (*In re Smerling Litigation*, United States District Court, Southern District of New York (Case No. 21 Civ. 2552 (JPC))).  The civil cases allege the details of Mr. Smerling's fraudulent scheme that resulted in approximately $136 million of combined losses to Silicon Valley Bank and Citizens Bank ($80 million and $56 million, respectively).  Mr. Smerling has consented to the entry of judgments against him in each of the civil cases. The Receiver understands that Mr. Smerling's sentencing is set for May 13, 2022.

      **I.**    **THE RECEIVER'S APPOINTMENT**

James S. Feltman is the Court-appointed Receiver over (i) Elliot S. Smerling ("Mr. Smerling"), (ii) JES Global Capital GP II, LLC ("JES GP II"), (iii) JES Global Capital II, L.P. ("JES Fund II"), (iv) JES Global Capital GP III, LLC ("JES Fund III") (together the "Receivership

May 6, 2022
Page 2

Entities"), and (v) the assets of sixty-one (61) Smerling-controlled entities listed on **Exhibit 1** to this Memo (collectively with Mr. Smerling and the Receivership Entities, the "Receivership Property"). The Receiver was first appointed pursuant to the Order entered by the United States District Court for the Southern District of Florida Court on May 14, 2021, and was reappointed by the United States District Court for the Southern District of New York on July 19, 2021, pursuant to the Order Granting Motion to (I) Consolidate SVB Action and Citizens Bank Action into a Single Action, (II) Appoint James Feltman as Receiver in Consolidated Action, and (III) Grant Unopposed Receivership Expansion Motion. *See Silicon Valley Bank v. JES Global Capital GP III, LLC and Elliot S. Smerling*, Case No. 21 Civ. 2552 (JPC) (ECF No. 98) (the "Expansion Order") (collectively, with the Order and the Expansion Order, the "Receivership Orders").

## II.     RECEIVERSHIP PROPERTY – ANALYSIS OF RECORDS

### A.     Computers and Documents

Since his appointment on May 14, 2021, Mr. Feltman and his team of professionals from Kroll Associates, Inc. and Berger Singerman LLP, the Receiver's general counsel, and other law firms serving as special counsel to the Receiver (collectively, the "Receivership Team") have been unable to locate any JES Global computers or any material electronic financial/company documents. As part of its discovery, members of the Receivership Team interviewed Mr. Smerling's former management team. Each member of the management team claimed ignorance regarding the location of any computers or electronic documents/financial information. We understand that Mr. Smerling suggested that the "Government / FBI" may have taken the computers when the JES Global offices were searched following Mr. Smerling's arrest; however, the Receivership Team has received no information that the Federal Bureau of Investigation seized

May 6, 2022
Page 3

any computers in its search of the JES Global office after Mr. Smerling's arrest on February 26, 2021. Similarly, the Receivership Team has tried to obtain emails from the JES Global servers/host; however, there were minimal emails remaining in the account from any user—including Mr. Smerling. When the Receiver and members of the Receivership Team interviewed Mr. Smerling on April 7, 2022 (the "Interview"), Mr. Smerling claimed that he did not know how there could not be any emails left on the server.

In order to facilitate the Receiver's execution of his duties, the Receivership Team has had to recreate the JES Global books and records based solely on documents produced by non-parties and pursuant to non-party subpoenas.

### III. RECOVERED RECEIVERSHIP PROPERTY

#### A. Cash and Investment Accounts

Mr. Smerling and/or Smerling-controlled entities maintained at least 113 cash and investment accounts across at least twelve (12) financial institutions. The Receivership Team has recovered $7,330,514.19 in funds from the various accounts.

#### B. Vehicles

The Receivership Team identified, located, and seized eleven (11) vehicles belonging to Mr. Smerling or Smerling-controlled entities. The Receivership Team also identified vehicles that were the subject of fraudulent transfers between a Smerling-controlled entity and friends or family members of Mr. Smerling. The Receivership Team has recovered $804,000.00 in funds from the sale of the vehicles.

#### C. Real Estate

May 6, 2022
Page 4

The Receivership Team identified and seized seven (7) parcels of real estate belonging to Mr. Smerling or Smerling-controlled entities: a home in which Mrs. Smerling and the Smerling daughters resided until recently, located in Lake Worth, Florida; a home in which Mr. and Mrs. Smerling and their daughters previously resided, located in Wellington, Florida; four (4) parcels of vacant land located in Lake Worth, Florida; and a flat located in London, England. The Receivership Team has recovered $6,775,284.14 in funds from the sale of six (6) of the seven (7) parcels of real estate.

### D.  Loan to J Rose Consulting LLC

The Receivership Team investigated a Second Renewal Balloon Promissory Note dated April 24, 2020 (the "J Rose Note") by the Obligor/Maker, J Rose Consulting LLC (the "Borrower") in favor of the Holder, Canes One, LLC (the "Lender"). The owner of J Rose Consulting LLC is former JES Global employee, Jennifer Hebrock. The Lender is a Smerling-controlled entity. The Borrower was in default on the J Rose Note for failure to make payments. The Receivership Team collected $576,438.36 in principal and default interest under the J Rose Note.

### E.  Ascensus 529 Plan Accounts

Mr. Smerling set up 529 plan accounts in the names of his niece and nephew without their (or their guardians' knowledge). The Receivership Team notified the guardians of Mr. Smerling's actions and each guardian immediately identified Mr. Smerling's actions as fraudulent. Counsel for the guardians assisted the Receiver in recovering the funds from each account for a total of $842,964.01.

### IV.  **OTHER RECEIVERSHIP PROPERTY NOT YET MONETIZED**

BERGER SINGERMAN

May 6, 2022
Page 5

### A. Cash and Investment Accounts

The cash and investment accounts considered Receivership Property but not yet monetized by the Receiver are three (3) accounts held in the name of Smerling-controlled entities at Union Bancaire Privee ("UBP Accounts") in Switzerland. These UBP Accounts were established in connection with the formation of two (2) offshore asset protection trusts settled by Mr. Smerling in 2017 and 2019 and organized under the law of the Cook Islands. Cook Island Trusts are widely recognized as vehicles used by Americans and others for offshore asset protection and to put assets beyond the reach of creditors. The Receivership Team has engaged legal counsel in Switzerland to recover the funds in the UBP Accounts. Until the legal matters are resolved, the Receivership Team cannot confirm the amount of money on deposit in the UBP Accounts. On May 5, 2022, counsel for Mr. Smerling has provided counsel for the Receiver information received from the Trustee of the one of the offshore trusts advising that there was $3,639,161 on deposit in a UBP account as of March 14, 2022.

The Receivership Team is also investigating whether an investment account held at Fidelity Investments in Mr. Smerling's name under the JES Global Capital GP LLC 401(k) Profit Sharing Plan & Trust qualifies as Receivership Property.

### B. Other Investments

Mr. Smerling and/or Smerling-controlled entities directly or indirectly acquired a series of interests in the following companies: 3N Outdoor Media, Inc.; Callaway Golf Company; Equapath, LLC; Equapath Ventures, LLC; FIGS, Inc.; and Space Exploration Technologies Corp. ("SpaceX"). The Receivership Team's investigation of these investments is ongoing.



May 6, 2022
Page 6

### C. Vehicles

The vehicles considered Receivership Property but not yet seized and sold by the Receiver are a 2016 Land Rover currently in the possession of World Class Auto Repair, LLC and a 2020 Cadillac Escalade currently in the possession of Mr. Smerling's wife.

### D. Loan to World Class Auto Repair Center, LLC

The Receivership Team investigated a Senior Secured Balloon Promissory Note dated November 19, 2019 (the "World Class Note") by the Obligor/Maker, World Class Auto Repair Center, LLC (the "Borrower") in favor of the Holder, Canes Twenty Two, LLC (the "Lender"). The owner of World Class Auto Repair Center, LLC is Jeffrey A. Kranitz, a childhood friend of Mr. Smerling. The Lender is a Smerling-controlled entity. The World Class Note is in the amount of $500,000.00 and bears interest at 2% per annum. The terms of the World Class Note call for one balloon payment of all unpaid principal and accrued and unpaid interest on or before November 1, 2026, the World Class Note's maturity date.

The Receivership Team is currently in litigation with the Borrower and Mr. Kranitz because of their failure to comply with non-party subpoenas for documents and for depositions. The Borrower filed a motion for protective order in the Southern District of Florida. Magistrate Judge Reinhart held a hearing on the matter on April 22, 2022 and denied the Borrower's motion. Accordingly, Judge Reinhart ordered the Borrower and Mr. Kranitz to produce all responsive documents by May 2, 2022, and to sit for deposition on or before May 11, 2022. The Receivership Team is exploring whether the Borrower is in default under the World Class Note and/or whether the $500,000 loan was a fraudulent transfer.



May 6, 2022
Page 7

### E.    Loan to Innovative Sales Solution, LLC

The Receivership Team investigated a Balloon Promissory Note dated July 7, 2020 (the "Innovative Note") by the Obligor/Maker, Innovative Sales Solutions, LLC (the "Borrower") in favor of the Holder, Canes Six, LLC (the "Lender").  The managers of Innovative Sales Solutions, LLC are Redick W. Brown, II and Jennifer Mazyck-Brown, family friends of Mr. Smerling.  Notably, Mr. Brown gave character testimony on behalf of Mr. Smerling at Mr. Smerling's detention hearing in the Southern District of New York (Case No. 21-cr-317).  The Lender is a Smerling-controlled entity.  The Innovative Note is in the amount of $655,780.00 and bears interest at a rate of 3% per annum.  The terms of the Innovative Note call for monthly interest only payments in the amount of $1,639.45 and a final balloon payment of all outstanding principal and interest in the amount of $657,419.45 due and payable on July 7, 2022 — the Innovative Note's maturity date.  To date, the Receivership Team has collected $18,033.95 in monthly interest under the Innovative Note.

### F.    Loan to ABN Law, PLLC

The Receivership Team investigated a Senior Secured Promissory Note dated June 1, 2017 (the "ABN Note") by the Obligor/Maker, ABN Law, PLLC (the "Borrower") in favor of the Holder, Hurricanes Five of Florida, Inc. (the "Lender").  The Borrower is the former three-person law firm for Mr. Smerling and the Smerling-controlled entities; one of the lawyers is Mr. Smerling's college friend and fraternity brother.  The Lender is a Smerling-controlled entity.  The ABN Note is in the amount of $500,000.00 and bears interest at a rate of 3% per annum.  The terms of the ABN Note call for one hundred eight (108) monthly principal and interest payments in the amount of $5,785.86 from July 1, 2020 to June 1, 2029, the ABN Note's maturity date.

May 6, 2022
Page 8

After Mr. Smerling's arrest, the Borrower dissolved and has made no payments under the ABN Note. The Receivership Team is exploring ways to collect the amounts due under the ABN Note.

### G. Vacheron Constantin Watch

The Receivership Team has been diligently working to recover funds from an insurance company for a Vacheron Constantin watch Mr. Smerling insured. At the Interview, Mr. Smerling stated that the watch did not belong to him. Instead, Mr. Smerling claimed that the watch belonged to someone else, and he only insured the watch as a favor to the owner. When asked whether Mr. Smerling ever wore the watch, Mr. Smerling stated he wore it once. During the Interview, the members of the Receivership Team confronted Mr. Smerling with a picture of Mr. Smerling wearing the watch. Mr. Smerling continued to maintain that he did not own the watch, does not know where it is, and does not recall the last time he saw the watch.

### H. Ascensus 529 Plan Accounts

In addition to the 529 accounts set up for his niece and nephew, Mr. Smerling set up 529 plan accounts for his two daughters. The Receiver believes that the daughters' 529 accounts were funded with the proceeds of fraudulently obtained funds (and Receivership Property). Currently, there is approximately $1,632,774.58 (as of 12/31/21) in the daughters' 529 plan accounts for which the Receivership Team is seeking Mr. Smerling's cooperation in collecting. As noted below in Section VII, Mr. Smerling has asked the Receiver to agree to release some portion of the funds on deposit in his daughters' 529 accounts to each of his daughters in exchange for cooperation in facilitating the Receiver's recovery of the balance of the funds on deposit therein. The Receiver is awaiting the details of Mr. Smerling's request.



May 6, 2022
Page 9

## V. INTERVIEW OF MR. SMERLING

In the April 7, 2022 Interview, Mr. Smerling's tone was responsive and polite. However, the Receivership Team obtained no new data regarding additional assets the Receiver could pursue. Mr. Smerling maintains that all of his assets and the assets comprising the Receivership Property have been located by the Government and/or the Receivership Team.

The Receivership Team sought Mr. Smerling's cooperation through three cooperation letters; however during the Interview, Mr. Smerling only agreed to sign two of the cooperation letters. Mr. Smerling signed letters to assist with obtaining all assets, communication, and compliance with any requests made by the Receiver from two law firms Mr. Smerling used, Charles Russell Speechlys (a law firm in London), and Abreu Advogados (a law firm in Portugal). On April 7, 2022, Mr. Smerling declined to sign the cooperation letter to assist the Receivership Team with the assets being held by UBP. On May 5,2022, counsel to Mr. Smerling advised counsel to the Receiver that Mr. Smerling has agreed to sign the cooperation letter requested by the Receiver to assist the Receiver in recovering the funds on deposit at UBP and the other property held by the offshore trusts. As of this date, the Receiver has not received the signed cooperation letter due to the logistical issues in obtaining the signed letter from Mr. Smerling.

## VI. UNACCOUNTED FOR ASSETS

Based on the Receivership Team's accounting and forensic reconstruction of the books and records, there appears to be a $25-to-30 million "hole," i.e., the amount of assets or money that remains unaccounted for after the investigation conducted by the Receiver's Team. At the Interview, Mr. Smerling stated that there are no assets other than those that the Receiver has identified to date. He further stated that any money that is unaccounted for is likely due to payroll

BERGER SINGERMAN

May 6, 2022
Page 10

and operating expenses of his various businesses that the Receivership Team did not consider or underestimated. The Receiver does not consider Mr. Smerling's position to be credible.

### VII.   CONCLUSION

Mr. Smerling, through his counsel, has not opposed any motion or request that the Receiver has made in the criminal or civil district court cases to date. However, other than the UBP Accounts/the Cook Island offshore trust property (if any), the Receiver's collection efforts have not required Mr. Smerling's direct cooperation or active support. Even Mr. Smerling's relinquishment of his cell phone provided minimal information for the Receivership Team to act upon to recover Receivership Property. Now, Mr. Smerling's recent offer of assistance with the Cook Island offshore trusts is welcomed, but his execution of the cooperation letter pertaining to the amounts on deposit at UBP bank does not ensure that the Receiver will in fact succeed in recovering such funds.

Moreover, the Receiver believes that had Mr. Smerling opposed any of the relief the Receiver has sought to date, Mr. Smerling's objections would have been overruled. In light of the magnitude of the losses suffered by Citizens Bank and Silicon Valley Bank, the Receiver considers Mr. Smerling's efforts to condition his cooperation in recovering the amounts on deposit in the 529 plans on the Receiver agreeing to make funds available to his daughters to be inappropriate.

The Receivership Team has worked diligently for the past 11 months to recover as much as possible for the Receivership Estate. The Receiver acknowledges that, to date, Mr. Smerling has not affirmatively opposed any relief that the Receiver has sought. In considering Mr. Smerling's actions since being arrested in the context of determining the appropriate sentence, it is the Receiver's conclusion that until May 5, 2022, when Mr. Smerling agreed to sign the



May 6, 2022
Page 11

cooperation letter directed at the amounts on deposit in the offshore trusts, Mr. Smerling has not assisted the Receivership Team in any material way, and his explanation of certain transactions he engaged in to be lacking in credibility.

    Respectfully Submitted,

    BERGER SINGERMAN LLP
    General Counsel to James S. Feltman, Receiver

    Paul Steven Singerman

11394934-4