UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ELLIOT SMERLING,                                          :

                               Movant,          :          23-CV-3998 (DLC)
                                                          21-CR-317 (DLC)

               - v. -                                        :

UNITED STATES OF AMERICA,                    :

                          Respondent.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT SMERLING'S MOTION TO VACATE OR SET ASIDE HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

Timothy V. Capozzi
Jilan J. Kamal

Assistant United States Attorneys
           - Of Counsel -

**Table of Contents**

PRELIMINARY STATEMENT ......................................................................................... 1

OFFENSE HISTORY ....................................................................................................... 2

PROCEDURAL HISTORY ............................................................................................... 3

    I.    Arrest, Charges, and Pretrial Detention Proceedings ...................................... 3

    II.   The Defendant's Attempted Cooperation ...................................................... 4

    III.  The Plea Agreement ....................................................................................... 5

    IV.  The Guilty Plea .............................................................................................. 5

    V.   The Sentencing ............................................................................................... 7

    VI.  Smerling's Motion .......................................................................................... 9

    VII. Affidavits From Counsel ............................................................................. 10

APPLICABLE LAW ...................................................................................................... 10

ARGUMENT ................................................................................................................. 11

    I.    Counsel's Decision Against Filing a Whistleblower Action or Objecting to SVB's
    Victim Impact Statement Do Not Constitute Ineffective Assistance..................................... 11

        A.    No Prejudice Resulted from Counsel's Reasonable Decision Not to Pursue a
        Whistleblower Action ...................................................................................... 11

        B.    Sound Strategy Led Counsel Not to Object to SVB's Victim Impact Statement....... 13

    II.   The Guidelines Enhancement for Gross Receipts Was Proper ...................................... 15

    III.  Smerling's Decision to Proffer Was an Informed and Reasonable Strategic Decision . 16

    IV.  Counsel's Decision Not to Pursue an Audit Was Objectively Reasonable................... 18

    V.   Counsel's Decision Against a Fruitless Third Bail Request Was Not Ineffective
    Assistance ............................................................................................................ 18

    VI.  Counsel Requested Consideration of Smerling's Conditions of Confinement and Efforts
    at Rehabilitation ................................................................................................... 20

    VII. Counsel Reviewed The PSR With Smerling ................................................... 21

SMERLING IS NOT ENTITLED TO AN EVIDENTIARY HEARING................................... 22

CONCLUSION............................................................................................................... 22

i

**PRELIMINARY STATEMENT**

The Government respectfully submits this opposition to the motion filed *pro se* by Elliot Smerling ("Smerling") pursuant to Title 28, United States Code, Section 2255.   (21 Cr. 317 (DLC), Dkt. 60 (the "Motion" or "Mot."); *see also* 23 Cv. 3988 (DLC), Dkt. 1).[1]   Smerling principally argues that the Court should "correct" his sentence by reducing it from 97 months to 59 months because his counsel purportedly (1) failed to object to a victim impact statement or follow his request that they file a whistleblower action (*id.* at 5)[2]; (2) failed to object to allegedly overlapping Guidelines enhancements (*id.* at 7); (3) failed to protect or inform him in relation to his proffer sessions with the Government (*id.* at 10); (4) "failed to investigate funds disbursed by JES Global Capital" (*id.* at 12); (5) "ignored" his request to move for a bail hearing (*id.* at 17); (6) "ignored" his request that they argue for a downward departure based on the conditions of his pre-trial detention and his rehabilitative efforts (*id.* at 18); and (7) "never delivered a physical copy" of the presentence investigation report (the "PSR") to him (*id.* at 19).[3]   Smerling's claims find no support in the law or in the record.   To the contrary, Smerling's counsel—David M. Kubiliun,

---

[1] Unless indicated otherwise, future docket references herein refer to the criminal docket in the Southern District of New York, 21 Cr. 317 (DLC).

[2] The filing on ECF containing Smerling's Motion consists of a total of 32 pages.   References to the Motion herein refer to the page numbers appearing in blue type in the header of the filed version of the Motion available on ECF.

[3] In addition to reducing his period of incarceration, Smerling also requests that the Court "correct" his period of "probation" from three years to two years.   (Mot. at 21.)   The Government understands this to be a request that his period of supervised release be reduced by one year.

1

Esq., Guy A. Lewis, Esq., Adriana Collado-Hudak, Esq., and Philip L. Reizenstein, Esq., ("Counsel")—provided much more than constitutionally adequate representation, which contributed to his receipt of a sentence at the low end of the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines").   Smerling's Motion should be denied.

## OFFENSE HISTORY

As set forth in detail in the Government's sentencing submission, (Dkt. 45), the defendant engaged in a years-long scheme to defraud banks through the formation of a series of private equity funds (the "JES Global Capital Funds" or "Funds").   Each fund was formed with the alleged purpose of identifying and investing in small or mid-size, regional businesses that the Funds could develop and exit successfully.   With each Fund, Smerling attempted to solicit investment and loans from investors and financial institutions using private placement memoranda ("PPMs"), pitch decks, and purportedly "audited" financial statements that were largely fictitious.   Virtually all the material claims in these documents were false, including the Funds' purported portfolio companies (they had none); the identity of their third-party administrator (there wasn't one); their auditor (same); and their committed capital.   In particular, for each of the Funds, Smerling falsely claimed to have secured millions or hundreds of millions in committed capital from limited partners in the Funds.   Smerling even forged the signatures on the limited partner subscription agreements, which purported to be executed by authorized representatives of prominent investors (individual and institutional).

Using this series of falsified documents, Smerling secured an $8 million-dollar, subscription-backed line of credit for Fund I; a $60 million-dollar, subscription-backed line of

credit for Fund II; and a $150 million-dollar, subscription-backed line of credit for Fund III.   In the post-close diligence process that followed the loan Smerling obtained for Fund III, the lender, Silicon Valley Bank ("SVB"), began to question the authenticity of the documentation submitted by Smerling and contacted the Government.   Smerling was arrested shortly thereafter.

## PROCEDURAL HISTORY

### I.   Arrest, Charges, and Pretrial Detention Proceedings

On February 26, 2021, Smerling was arrested in the Southern District of Florida and charged by complaint (the "Complaint") with committing wire fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1343 and 1028A.   (*See* Dkt. 1).   The Complaint charged Smerling with his fraudulent scheme to secure financing from SVB.

On March 3, 2021, Smerling appeared for a detention hearing in the Southern District of Florida.   (*See* 21-MJ-8068 (BER) (S.D. Fl.) Dkt. 5).   After a lengthy hearing at which three witnesses testified and the parties exhaustively argued the issue, the Magistrate Judge ordered Smerling's continued detention, explaining:

> The Court finds that there is a serious risk that Defendant will flee or fail to appear if released.   This Court further finds that there is no condition or combination of conditions of release that will reasonably assure Defendant's presence if Defendant is released.   These findings are based upon all of the relevant facts, including the very serious nature of the charges; the substantial weight of the evidence against Defendant; the substantial prison sentence Defendant is facing if convicted, which, at Defendant's age, could amount to a life sentence; the fact that Defendant allegedly fraudulently obtained approximately $95,000,000.00 by forging signatures, engaging in deceit, and providing blatantly false and fantastical statements to the Victim Bank; the fact that approximately $80,000,000.00 of the allegedly fraudulently obtained money is currently unaccounted for; the fact that this money, along with Defendant's other significant assets, could readily allow Defendant to flee to the shelter of a foreign jurisdiction, such as Brazil; Defendant's connections together with his wife's connections, to Brazil; the known difficulty or

3

> impossibility of extraditing individuals from Brazil to the United States, especially when they have citizenship or family ties to Brazil; the ease with which Defendant could flee the United States given his own substantial assets and the unaccounted for money; Defendant's extensive pre-COVID international travel; and his relationships with foreign banks and knowledge of domestic and international finance.

(*Id.* at 6-7 (footnotes omitted)).   Logistical obstacles caused by the Covid-19 pandemic delayed Smerling's arrival in this District.   Before he arrived, Smerling moved for reconsideration of the detention order in the Southern District of Florida, arguing that his vulnerability to Covid-19 and the difficulties of meeting with Counsel presented compelling reasons justifying release.   (21-MJ-8068 (BER) (S.D. Fl.) Dkt. 9).   On May 6, 2021, the Magistrate Judge in Florida denied the request, concluding that the Southern District of Florida lacked jurisdiction given Smerling's transfer to the Southern District of New York.   (21-MJ-8068 (BER) (S.D. Fl.) Dkt. 10).

On or about May 12, 2021, Smerling arrived in this District and was presented and arraigned before Judge Netburn.   (Dkt. 6).   On the same date, a grand jury sitting in this District returned an indictment (the "Indictment") that charged Smerling with the same two counts set forth in the Complaint, as well as a third count, charging bank fraud, in violation of Title 18, United States Code, Section 1344, in connection with his scheme to defraud SVB.   (Dkt. 7).

## II.    The Defendant's Attempted Cooperation

Shortly after his transfer to the Southern District of New York, Smerling, through Counsel, indicated his willingness to cooperate with the Government.   The defendant met with the Government twice; one such proffer was also attended by the Securities Exchange Commission ("SEC").   (PSR at 22).   The Government ultimately concluded that Smerling's information did

not rise to the level of "substantial assistance" under Title 18, United States Code, Section 3553(e) and Section 5K1.1 of the Guidelines.   (*Id.*).

### III.   The Plea Agreement

On February 8, 2022, Smerling waived indictment and pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to a superseding information (the "Superseding Information"). (Dkt. 40 ("Plea Tr.").)   The Superseding Information charged him in two counts with bank fraud and securities fraud, in violation of Title 18, United States Code, Section 1344; Title 15, United States Code, Section 78j(b) & 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5, in connection with his years-long scheme to secure financing from banks and investors—ostensibly for his Funds—through deceptive and fraudulent means.   (Dkt. 37).

The Plea Agreement and PSR calculated the applicable Guidelines range identically.   (*See* PSR ¶¶ 7, 29-41, 44, 77).   Relevant here, both the Plea Agreement and the PSR found that a two-level increase was applicable, pursuant to U.S.S.G. § 2B1.1(b)(17)(A), because the defendant derived more than $1,000,000 in gross receipts from two financial institutions.   (*Id.* ¶ 7, 33). Based on a total offense level of 33, and a Criminal History Category of I, the stipulated and applicable Guidelines range was 97 to 121 months' imprisonment.   (*Id.* ¶ 7, 44).

As part of his Plea Agreement, Smerling was required to forfeit $133,957,323.65 in U.S. currency, representing proceeds traceable to the fraud that Smerling personally obtained as part of the scheme.   (*See id.* ¶ 7).

### IV.   The Guilty Plea

At the outset of the plea proceeding, Smerling was placed under oath, and he affirmed that he had "sufficient opportunity to discuss [his] case with counsel," and "had sufficient opportunity

to discuss with them the charges to which [he] intend[ed] to plead guilty, any defenses . . . to those charges, and the consequences to [him] of entering a plea of guilty."   (Plea Tr. at 2-4).   Smerling also affirmed that he was "satisfied" with Counsel's representation of him.   (*Id.*).   The Court then informed Smerling of the consequences of entering a plea of guilty; Smerling affirmed he understood.   (*Id.* at 4–7).

The Court also explained the meaning and consequences of a waiver of indictment.   (*Id.* at 7).   Smerling affirmed that he understood, had read the written waiver of indictment form, discussed it with Counsel, and was willing to waive his right to indictment by a grand jury.   (*Id.* at 7–8).   The Court found that Smerling had knowingly and voluntarily waived indictment.   (*Id.* at 8).

Smerling next affirmed that he understood the charges against him and the potential penalties for the charged.   (*Id.* at 8-12.   Smerling then affirmed that he had read and signed the Plea Agreement, discussed it with Counsel, had a good understanding of its terms, understood the Guidelines range, and understood his waiver of appeal.   (*Id.* at 12–14).   Smerling then allocuted that he was "guilty of committing bank fraud and securities fraud," stating, *inter alia*:

> I lied to the banks when I applied for loans on behalf of my equity funds.   I forged signatures of purported investors and created fake documents in support of those applications.   I did this to induce the banks to loan those funds.
>
> I committed securities fraud when I solicited investors to invest in my equity funds. I showed investors fake documents related to those funds in order to get them to invest in these private equity funds.

(*Id.* at 14-15).

Smerling also affirmed that he knew the documents were fake at the time he showed them to investors, that the fake documents were transmitted over the Internet, and that he intended that

6

they be relied upon when investors made investment decisions.   (*Id.* at 14–16).   The Court concluded that Smerling knew his rights, was aware of the consequences of his plea, and had entered his plea voluntarily.   (*Id.* at 17).

### V.     The Sentencing

On April 29, 2022, Counsel filed a 13-page sentencing submission on Smerling's behalf, along with approximately 16 letters of support.   (Dkt. 43 ("Def. Sent. Sub.")).   In the submission, Counsel argued for a "downward departure or variance."   (*Id.* at 1).   In support, Counsel pointed to, among other things, Smerling's immediate remorse, swift decision to cooperate, and the fact that he "directed his attorneys to begin working on an agreed resolution" to save the Government "substantial time, energy and resources."   (*See id.* at 2–3).   Counsel also argued that Smerling "debriefed truthfully and assumed full responsibility without blaming anyone else."   (*Id.* at 12). Counsel also argued that Smerling "fully cooperated" with both the SEC and the Department of Justice ("DOJ"), which included answering the SEC's questions "honestly and completely" and "submit[ing] to multiple debriefings" with DOJ in which he was "open, candid and forthright." (*Id.* at 3–4).   Accordingly, Counsel emphasized that Smerling awaited sentencing "with a profound request for forgiveness."   (*Id.* at 4).

Smerling's Counsel also justified its requested sentence by pointing out that Smerling had been "incarcerated since February 2021 and endured more restrictive conditions due to the pandemic."   (*Id.* at 8).   Counsel urged the Court to consider that Smerling's "time in custody has been more onerous due to Covid-19" "as grounds for a downward departure or variance."   (*Id.* at 11).   Counsel also pointed to Smerling's rehabilitation and pro-active self-improvement, "earning more than 33 course certifications while in custody."   (*Id.* at 9-10, 12).

On May 13, 2022, Smerling was sentenced.  Counsel affirmed that both Smerling and Counsel had "read the presentence report" and "discussed it" with one another and had no objections.  (Dkt. 49 ("Sent. Tr.") at 3).  In its remarks to the Court, the Government acknowledged Smerling's "early and thorough acceptance of responsibility," which in its view warranted a sentence "at the low end of the [G]uidelines," notwithstanding the magnitude of Smerling's fraud.  (*Id.* at 9).

Counsel argued that it was "unusual" in a "white collar case" for an individual to "come[] forward and admit[] his culpability" as Smerling had, and that it was "remarkable" that Smerling did not qualify his responsibility by, for example, trying to "shift blame."  (*Id.* at 14).  Counsel cited Smerling's proffers with the Government at which he "answered question after question." (*Id.* at 23–24).  Counsel also emphasized Smerling's conditions of incarceration during the pandemic, including his custody in "the most prolific state facility in the country in terms of contamination" of Covid-19.  (*Id.* at 22; *see also id.* at 37).  Ultimately, Counsel asserted that a sentence between 33 and 41 months would be appropriate.  (*Id.* at 37).

Next, Smerling addressed the Court, asserting that he was "deeply sorry" and that, while incarcerated, he had "dedicated [himself] to keeping [his] mind and skills sharp in learning new things," completing "more than 30 certificate programs."  (*Id.* at 38).

The Court acknowledged Smerling's cooperation, his request for a below-Guidelines sentence, and his "health and the conditions of confinement, particularly during the pandemic." (*Id.* at 4-5).  The Court sentenced Smerling to the bottom end of the applicable Guidelines range: 97 months' imprisonment followed by three years of supervised release.  (*Id.* at 39).  The Court explained that Smerling had committed a "brazen crime committed over many years," stealing

8

millions of dollars with no excuse.  (*Id.*).   The Court cited its consideration of the "Section 3553(a) factors, the parties' arguments, and their submissions."   (*Id.*).

## VI.   Smerling's Motion

On or about May 12, 2023, Smerling filed the Motion, principally seeking reduction of his sentence from 97 months to 59 months.  (Mot. at 21).   Smerling asserts multiple grounds for ineffective assistance.   First, Counsel failed to file a whistleblower "action" with the SEC as he had requested "with which [he] could have secured whistleblower status, avoid prosecution, defer prosecution, secure a better plea deal, or achieve a lower sentence."  (Mot. at 5).   Smerling additionally claims in this ground that Counsel failed to object to the victim impact statement from SVB, one of the victims of Smerling's fraud.   (*Id.*).   Second, Counsel failed "to object to a 2 level gross receipts enhancement as overlapping."   (*Id.* at 7).   Third, Counsel failed to "protect" him during plea negotiations and in his proffer sessions.   (*Id.* at 10).   Fourth, Counsel failed to investigate or "hire an independent CPA" to audit Smerling's use and disbursement of the proceeds of the fraud to establish that he used millions in funds unaccounted for by the receiver to pay employees and the interest on loans.   (*Id.* at 12).   Fifth, Counsel failed to re-apply for bail after Smerling's arrival in this District.   (*Id.* at 17).   Sixth, Counsel "ignored" Smerling's request that they urge the Court to consider the harsh conditions of his incarceration during the pandemic and his rehabilitative efforts at sentencing.   (*Id.* at 18).   Finally, Counsel "never delivered a physical copy" of the PSR to him.   (*Id.* at 19).

### VII.    Affidavits From Counsel

On or about July 5, 2023, Smerling waived the attorney-client privilege for the purposes of this Motion.  (Dkt. 64).  Thereafter, the Government sought and obtained affidavits from counsel.[4]  Counsel's responses to Smerling's claims are incorporated below.

## APPLICABLE LAW

A defendant's Sixth Amendment right to counsel is violated when he receives "ineffective assistance."  *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010).  A claim that defense counsel was ineffective is evaluated under a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).  To prevail, Smerling must (1) show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice."  *Strickland*, 466 U.S. at 688, 693.  Smerling bears a "heavy" burden under the *Strickland* test because when analyzing the first prong, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Harrington v. United States,* 689 F.3d 124, 129 (2d Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).  Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

---

[4]  The affidavits of counsel are attached as Exhibit A (Affidavit of David M. Kubiliun, Esq. ("DMK Aff.")), Exhibit B (Affidavit of Guy A. Lewis, Esq. ("GAL Aff.")), Exhibit C (Affidavit of Adriana Collado-Hudak, Esq. ("ACH Aff."), and Exhibit D (Affidavit of Philip L. Reizenstein, Esq. ("PLR Aff.").  References to the affidavits herein include the page numbers of the relevant portions of the affidavits.

Even if Smerling can show that counsel's representation fell below an objective standard of reasonableness, he must further establish that he was prejudiced by counsel's errors; there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.   Where a claim challenges counsel's conduct at sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

## ARGUMENT

### I.   Counsel's Decision Against Filing a Whistleblower Action or Objecting to SVB's Victim Impact Statement Do Not Constitute Ineffective Assistance

Smerling asserts that Counsel "fail[ed] to understand securities laws," which caused them to render ineffective assistance insofar as Counsel neither filed "a whistleblower action"[5] nor objected to SVB's victim impact statement.   (Mot. at 5).   Smerling's claims are meritless.

### A.   No Prejudice Resulted from Counsel's Reasonable Decision Not to Pursue a Whistleblower Action

Smerling seems to allege that his attorneys, in addition to arranging multiple proffer sessions with the FBI, the United States Attorney's Office, and the SEC, should have completed and filed a form used to financially reward qualifying persons who bring information meeting certain criteria to the SEC.   (Mot. at 5, 23-31; 15 U.S.C. § 78u-6).   Smerling contends, without

---

[5] This "whistleblower action" seems to be an SEC form for a "Tip, Complaint, or Referral," which Smerling attaches to his Motion.   (Mot. at 23-31).

support, that, if Counsel had helped him file such a form, he could have avoided prosecution or gained a lower sentence.

Smerling offers no support for this claim, and the record flatly contradicts it.   The affidavits from Counsel reflect that Counsel discussed filing a whistleblower action with Smerling; Counsel advised against doing so because, among other reasons, it risked complicating Smerling's chosen strategy of maximum cooperation; and Smerling ultimately agreed with this strategy.   (*See* GAL Aff. at 3-4; DMK Aff. at 2-3; ACH Aff. at 2-3; *see also* PLR Aff. at 4-5).   Notwithstanding the foregoing, Counsel engaged with the SEC at the defendant's request, arranged for the defendant to meet and provide the purported "whistleblower" information to the SEC, and ultimately secured a settlement with the SEC.   (*See* GAL Aff. at 3-4; DMK Aff. at 2-3).   Far from "incompetence under 'prevailing professional norms,'" Counsel's strategy to cooperate directly with the entity with control over Smerling's criminal prosecution—the United States Attorney's Office—with the SEC participating, was objectively reasonable.   *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

Equally important, even if Counsel *had* disregarded Smerling's wishes with respect to filing a civil whistleblower action, Smerling cannot establish *Strickland* prejudice on this basis. *See Dresser Industries, Inc. v. United States*, 596 F.2d 1231, 1237 (5th Cir. 1979) ("Since the SEC's agents lack[] actual authority to contractually limit the prosecutorial function of the Department of Justice, any such agreement with [defendant] would be unenforceable."). Smerling has not explained how a whistleblower action filed with the SEC could have resulted in any of the benefits he seeks (*i.e.*, "avoid prosecution, defer prosecution, [gain] a better plea deal [sic], or [gain] a lower sentence"), especially since his attorneys succeeded in arranging an in-

12

person proffer with the SEC (along with the United States Attorney's Office), which was part of a defense strategy of attempted cooperation that yielded concrete benefits in the form of a below-Guidelines sentencing recommendation from the United States Probation Office ("Probation Office"), (PSR at 21); the Government's recommendation of a sentence at the low end of the Guidelines range, (Dkt. 45 at 1); and Smerling's ultimate receipt of a sentence at the bottom of the Guidelines Range, (Dkt. 48).

**B.   Sound Strategy Led Counsel Not to Object to SVB's Victim Impact Statement**

Smerling next claims that Counsel was ineffective for failing to object to SVB's victim impact statement.   (*See* Mot. at 5).   This unsupported claim is precisely the type of "airy generalities" that courts regularly reject.   *See United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987); *see also United States v. Patasnik*, 89 F.3d 63, 68 (2d Cir. 1996) (rejecting unsubstantiated claims of improper investigation and inadequate preparation).   Smerling provides no explanation as to what, in particular, Counsel should have objected to nor the basis for the objection.   Rather, Smerling states that SVB's letter contained "false or incomplete information" and that it purportedly showed SVB's "unclean hands."   (Mot. at 5).[6]   Nowhere does Smerling state precisely what "false or incomplete information" should have been objected to, and his bald

---

[6] Smerling's allegation that SVB's statement presented false information to the Probation Office is patently incredible.   The victim impact statement was filed the day before sentencing, May 12, 2022, while the final PSR was revised about a week earlier, on May 4, 2022.   *Compare* Dkt. 46 *with* Dkt. 44; *Puglisi v. United States*, 586 F.3d 209, 214 (2nd Cir. 2009) (the Court "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding.").

allegation of "unclean hands" is similarly vague.   Accordingly, he does not provide any "detailed . . . issues of fact" that could entitle him to relief.   *See Gonzalez*, 722 F.3d at 131.

Smerling's claim is also flatly contradicted by the affidavits of his attorneys.   Counsel's affidavits make clear that the decision not to object to the victim impact statement was "justified as a result of some kind of plausible [litigation] strategy."   *See Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) (quoting *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998)). Counsel's strategy comprised emphasizing Smerling's remorse and acceptance of responsibility. (*See, e.g.*, GAL Aff. at 4; DMK Aff. at 2; ACH Aff. at 2; PLR Aff. at 5-6).   In seeking a lower sentence, Counsel emphasized that Smerling "admits his culpability," and, indeed, expressly disavowed that the defense was "blaming any victim."   (Sent. Tr. at 14, 17).   Arguing that a victim of Smerling's fraud had "unclean hands" and that its statement presented "false or incomplete information" would have undermined this reasonable strategy by suggesting that Smerling did not accept full responsibility for the fraud.   Even so, at least three of his attorneys relayed to Smerling that he could object to the timing of the letter—and seek to adjourn sentencing to take additional time to contest the letter's claims—or proceed.   Smerling chose to proceed. (GAL Aff. at 4; DMK Aff. at 3; ACH Aff. at 3).   Courts have recognized that similar choices made by counsel in other cases was not ineffective assistance.   *See, e.g.*, *Dempsey v. United States*, No. 18-5464, 2018 WL 5819501, at *2 (6th Cir. Aug. 14, 2018) ("Under these circumstances, counsel made a reasonable strategic decision to avoid attacking the specific factual allegations of a sympathetic witness and to instead apologize and express remorse."); *United States v. Ekundayo*, 18 Cr. 628 (VEC), 2021 WL 5449349, at *3 (S.D.N.Y. Nov. 22, 2021) (failure to object to victim

14

impact statement was not ineffective assistance where purported error did not affect the Guidelines range).

Smerling's claim that Counsel failed to address inaccuracies is also contradicted by the record, which reflects Counsel's active involvement in addressing both the PSR and SVB's victim impact statement.   The PSR reflects that Counsel sought and obtained several corrections and clarifications on Smerling's behalf.   (*See* Dkt. 44 at 19).   Likewise, Smerling's Counsel waged a thorough defense against SVB's pursuit of attorney's fees and certain pre-judgement interest, losing on pre-judgement interest but prevailing in the argument against Smerling's obligation to pay SVB's attorney's fees.   (See Dkt. 56).   Accordingly, Counsel pursued the objectives Smerling accuses them of abandoning, albeit in a more conciliatory manner, and achieved actual results—this was objectively reasonable.

Smerling has also failed to show prejudice.   Since he does not point to what aspect of the victim impact statement should have been objected to, the objection he now seeks would have been swiftly rejected.   The "'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'"   *Harrington*, 689 F.3d at 130 (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).   Furthermore, even if such an objection had some merit, Smerling has not shown that a sustained objection to the statement would have had a reasonable probability of reducing the length of his sentence.

## II.   The Guidelines Enhancement for Gross Receipts Was Proper

Smerling's attorneys also did not render ineffective assistance by failing to make a meritless argument that Guidelines Section 2B1.1(b)(1)(M), which applies an increase of two levels if "the defendant derived more than $1,000,000 in gross receipts from one or more financial

institutions as a result of the offense," "substantially overlapped" with Section 2B1.1(b)(17)(A), which applies an increase of 24 levels if the pecuniary harm resulting from the offense exceeded $65,000,000.  (Mot. at 7).  The Second Circuit has rejected precisely this claim.  *See United States v. Kilkenny*, 493 F.3d 122, 131 (2d Cir. 2007) ("We have previously ruled that the cumulation of the dollar amount enhancement and the financial institution enhancement do not constitute impermissible double-counting because the two enhancements serve different purposes.").  Counsel's failure to make what they accurately understood to be a meritless objection was not objectively unreasonable and caused no prejudice.  (*See* GAL Aff. at 4-5; DMK Aff. at 3; ACH Aff. at 3); *see also Harrington*, 689 F.3d at 130 ("'Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.'" (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994))).

### III.   Smerling's Decision to Proffer Was an Informed and Reasonable Strategic Decision

Smerling's next argument seems to be that Counsel was ineffective either in advising him with respect to his decision to proffer with the Government or in ignoring violations of either the proffer agreement or Rule 410's qualified protection of proffered information.  (*See* Mot. at 10). He is wrong.

Smerling's bald assertion that he was not informed of the trade-offs of proffering is belied by the record.   Counsel's affidavits make clear that they reviewed the pros and cons of proffering with Smerling, as well as the proffer agreement itself, which agreement was explained to Smerling by the Government again at the beginning of his first proffer.  (*See* GAL Aff. at 5; DMK Aff. at

3-4; ACH Aff. at 3-4; PLR Aff. at 6-7).   The affidavits further make clear that Smerling's ultimate decision to proffer was part of an objectively reasonable strategy of cooperation.   (*Id.*).

Likewise, Smerling's vague claim that Counsel ignored violations of either the proffer agreement or Rule 410's qualified protection of proffered information is without any support. Insofar as it relates to the presence of a charge of securities fraud or an expansion of the offense time period in the Superseding Information, he does not explain how those facts reflect a breach of the agreement or the Rule, and any objection along those lines would have been frivolous. Furthermore, even if it were true that Smerling's proffers resulted in the securities fraud count, courts have recognized that the decision to proffer can be an objectively reasonable strategy "even if a defendant makes statements during a proffer session that lead to additional criminal charges" *See FNU LNU v. United States*, 09 Cr. 543 (RJS), 2015 WL 5893723, at *7-8 (S.D.N.Y. Oct. 7, 2015) (the decision to proffer "can be considered an objectively reasonable strategy" "even if a defendant makes statements during a proffer session that lead to additional criminal charges").

Smerling also fails to show prejudice.   Smerling's guilty plea to a two-count Superseding Information enabled him to avoid trial on a three-count Indictment that included an aggravated identity theft charge, which carried the prospect of a mandatory, two-year consecutive sentence. This is in addition to the other concrete benefits that flowed from the defense strategy of proffering with the Government in service of attempted cooperation, including a below-Guidelines sentencing recommendation from the Probation Office, (PSR at 21); the Government's recommendation of a sentence at the low end of the Guidelines range, (Dkt. 45 at 1); and Smerling's ultimate receipt of a sentence at the bottom of the Guidelines Range, (Dkt. 48).

### IV.   Counsel's Decision Not to Pursue an Audit Was Objectively Reasonable

Next, Smerling asserts that Counsel was ineffective in failing to investigate or retain "an independent CPA" to investigate his claim that funds the receiver could not account for were used to pay employees and interest.   (*See* Mot. at 12).   Smerling's claim that his lawyers did not investigate his claims in this regard is directly refuted by Counsel's sworn affidavits, which describe their extensive efforts to analyze the financial records and discuss those records with Smerling.   (*See* GAL Aff. at 5-6; DMK Aff. at 4; ACH Aff. at 4; PLR Aff. at 7-9).   In any event, Smerling offers no specific facts to support the conclusion that the investigation or audit he now says should have happened would have benefited him.   To the contrary, as attested by Counsel, further investigation was unlikely to help Smerling and indeed could have done the opposite, since Smerling was unable to account for millions of dollars he unlawfully obtained.   (GAL Aff. at 5-6; PLR Aff. at 7-9; DMK Aff. at 4; ACH Aff. at 4).   Counsel's decision not to pursue a potentially harmful exercise, which decision Smerling ultimately agreed with, was objectively reasonable. *See United States v. Pinhasov*, 762 F. App'x 43, 46 (2d Cir. 2019) ("When there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (internal quotations omitted)). Furthermore, since Smerling has not shown any likelihood that the investigation he now seeks would have inured to his benefit, his claim also fails on the prejudice prong.

### V.   Counsel's Decision Against a Fruitless Third Bail Request Was Not Ineffective Assistance

Smerling's claim that Counsel ignored his request to move for a bond hearing once he arrived in the Southern District of New York similarly fails.   (Mot. at 17).   First, Counsel's

18

affidavits refute Smerling's incredible claim that Counsel simply "ignored" such a request.   To the contrary, Counsel's affidavits reflect that Counsel explored a potential bail application, conferring with and learning from the Government that the Government would oppose bail, and ultimately decided, with Smerling's agreement, against pursuing such an application, which was, in their view, unlikely to succeed and not in Smerling's interests.   (GAL Aff. at 7; DMK Aff. at 4; ACH Aff. at 5; PLR Aff. at 9).   The reasonableness of Counsel's view is underscored by Smerling's failure to obtain bail on before he arrived in New York.   In Florida, the Magistrate Judge found that Smerling presented "a serious risk of flight or nonappearance," among other reasons, because of his marriage to a Brazilian citizen and his possession of "significant assets which would allow him to flee."   (21-MJ-8068 (BER) (S.D. Fl.) Dkt. 5 at 9).   Smerling points to no new facts or change of circumstances that would have made a request in the Southern District of New York any more likely to succeed.   Indeed, the relevant factors would have weighed more heavily against Smerling since his arrival in this District coincided with the grand jury returning a three-count indictment against him.   In these circumstances, it was not objectively unreasonable for Counsel not to seek bail.   *See United States v. Sloan*, No. CR-15-08232-PCT-DLR, 2021 WL 6498192, at *8-9 (D. Ariz. July 13, 2021) (decision against pursuing likely fruitless bail hearing was not ineffective assistance).

Smerling's claim also fails because he has not shown prejudice.   First, since Smerling has not identified any facts that might have made a renewed request for bail more likely to succeed than his previous attempts, he has not shown a "substantial, not just conceivable" probability that a third attempt at his release would have been successful.   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).   Second, Smerling does not explain how he

19

suffered any prejudice from his asserted inability to "manage his legal team more effectively" while incarcerated.  (Mot. at 17).   Accordingly, this claim also fails.

### VI.   Counsel Requested Consideration of Smerling's Conditions of Confinement and Efforts at Rehabilitation

Smerling's claim that Counsel disregarded his requests to have the Court consider "pre-trial detention rehabilitative efforts" and his "15 months in pre-trial detention" as means for a reduced sentence is frivolous.  (Mot. at 18).   Counsel made precisely these arguments at sentencing.   In their sentencing memorandum, Counsel emphasized that Smerling's "time in custody has been more onerous due to Covid-19" and argued that a downward variance was therefore warranted.   (Def. Sent. Sub. at 8, 11).   Additionally, in a section entitled "Rehabilitation," Counsel asserted that Smerling had "done much soul-searching"; "completed no less than 33 courses"; "reinvested himself in his faith"; and "proactively engaged in self-rehabilitation."   (*Id.* at 9–10).   Counsel then made similar arguments at the sentencing hearing, stating that Smerling's custodial facility was "the most prolific . . . in terms of [Covid-19] contamination," (Sent. Tr. at 19), and that it was "appropriate for your Honor to consider" his confinement in pandemic conditions.   (*Id.* at 24).   Speaking on his own behalf, Smerling highlighted his rehabilitative efforts, noting that he had "dedicated [himself] to keeping [his] mind and skills sharp in learning new things" and completed "more than 30 certificate programs."   (*Id.* at 38).   Since the arguments Smerling claims should have been made were in fact made, Smerling fails to show prejudice.

## VII.    Counsel Reviewed The PSR With Smerling

Lastly, Smerling claims that Counsel "never delivered a physical copy" of his PSR to him, which denied him the opportunity to offer unspecified objections.   (Mot. at 19).   Importantly, Smerling does not claim that he did not *review* the PSR.   Nor could he, as he did not object when Counsel, in his presence, affirmed at sentencing that both Smerling and Counsel had "read the presentence report," had "discussed it" with one another, and had no objections at that time. (Sent. Tr. at 3).   Counsel's representations in this regard are corroborated both by the PSR itself, which reflects that it was revised in response to corrections and clarifications from Counsel, (Dkt. 44 at 19), and by Counsel's affidavits, which make clear that Counsel carefully reviewed the PSR with Smerling, in person and over the phone.   (GAL Aff. at 7-8; DMK Aff. at 5; ACH Aff. at 6; PLR Aff. at 10).   Assuming counsel did not give Smerling a physical copy of the PSR to keep at his facility, that decision was not objectively unreasonable when Counsel had thoroughly and repeatedly reviewed the PSR with him, especially when doing so may have put Smerling at risk due to the PSR's reference to Smerling's attempted cooperation.   (Dkt. 44 at 22; *see also* DMK Aff. at 5).

Smerling also does not identify what objections he would have made had he possessed a physical copy of the PSR nor explain how having such a copy would have somehow better equipped him to make such "objections" than having the PSR exhaustively reviewed and discussed with him in person and over the phone.   Accordingly, he has not shown prejudice—that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.

## SMERLING IS NOT ENTITLED TO AN EVIDENTIARY HEARING

Smerling is not entitled to an evidentiary hearing because he has not "set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. The record has already been amplified by Counsel's detailed affidavits that credibly describe their representation of Smerling and rebut Smerling's "highly self-serving and improbable assertions." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Given this Court's intimate familiarity with the proceedings and surrounding circumstances, it is well within this Court's sound discretion to take "a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on [] counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing." *Chang*, 250 F.3d at 86.

## CONCLUSION

For the reasons set forth above, Smerling's Motion should be denied in its entirety.

Dated:  August 18, 2023
       New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:         s/
               Timothy V. Capozzi
               Jilan J. Kamal
               Assistant United States Attorneys
               (212) 637-2404 / 2192